The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this honorable court. Please be seated. Good morning. Before we begin our regular proceedings, I'd like to turn it over to Judge Wallach. I understand we have a motion for admission. We'll hear that motion. Thank you. Shamor, would you stand, please? I move the admission of Shamor Annas, who is a member of the Bar and Good Standing in the Highest Court of Texas. I have knowledge of his credentials and am satisfied that he possesses the necessary qualifications. I've said before this is such a bittersweet time for our chambers and for the court because we have a turnover of clerks and it's particularly bittersweet for me. I had, poor Shamor, I had extraordinary expectations for him when he came to the court and that's only because he was unbelievably well thought of by Chief Judge Stark, who strongly recommended him for clerkship in my chambers, but I have to say he really managed to exceed those expectations. He's been a wonderful, talented, thoughtful, mature clerk, a pleasure to be in the office, to have in the office. We shared long distance, at least, his wonderful marriage to his wonderful wife a few months ago. He survived last week in Houston, so he's got all sorts of talent and ingenuity and he's been just a delight to get to know and to have as part of our clerk family. So with that, I would move to admit him. Boy, he sounds highly qualified to me, Judge Cranker. Your motion is granted. Thank you. Ms. Bridget, your right hand. Do you solemnly swear that you will comport yourself as an attorney and counselor to this court, abiding by the law, and that you will support the Constitution of the United States of America? I do. Congratulations. First case this morning is 16-2211, WCM Industries v. IPS. Mr. Silvia, whenever you're ready. Thank you. May it please the Court, I have two issues that I'd like to discuss today. The legal impossibility of the indirect infringement judgment against the revised classic product line. Is there any difference between the revised products and the classic products other than the modified lock nut? No, there isn't. Okay. And then the Court's erroneous sustaining of the willful infringement verdict, based entirely on pre-patent conduct and the associated trebling of damages. If we find that WCM prevails on its cross appeal, do we need to address your arguments that there wasn't an indirect infringement by the revised products? Well, I think the issue on cross appeal is whether there was sufficient evidence to establish a doctrine of equivalence, and that is the issue also on our direct appeal. So if they prevail on that, we don't have to? Correct. Although I believe that cross appeal is improper and unnecessary, but I don't understand. First, the District Court's judgment upholding the indirect infringement verdict with respect to the revised classic product line reflects a legal impossibility. After trial, the judge vacated the verdict. I think that that legal impossibility is for a case-specific reason, namely that you actually have, in the current state of play, a judgment that the full package, the full assembly is non-infringing on the revised product. And so it really doesn't matter what the plumbers would do once they get even pieces and put stuff together. That's absolutely right, Your Honor. I don't remember the details, but I think you'll fill in the details. I think the other side makes an argument that there is at least some term in one of the claims that might not actually or that the jury might have concluded wasn't met until the materials that you supply are assembled. I'm not sure. Was that an argument? I don't believe that was an argument, Your Honor, because the claims are directed to an assembly of parts but don't require any installation. They require that the device be capable of being installed, but not actually, it's not directed to the installed configuration. I guess I have in mind that Mr. Jakes knows what I'm talking about. They have some term that they focus on saying, something is not detachably connected or something like that until the thing is actually put together, and they, of course, don't sell it put together. They sell a package that the plumber has to put together. I can understand the argument you're making there, Your Honor. It's the finished cap that ultimately is placed onto the elbow to cover up the hole that allows the water to flow out. But the claim limitation is detachably engaged. It still does not require it to be attached. The jury certainly could have made such a theory, but again, even the installed construction. Was that argument presented to the jury? Was there an argument or evidence on the specific point that, I guess it would have been a point that you might have made as a defendant, that that element is not met by what you ship out the door because nothing is engaged until it's actually put together? No, I don't think that argument was made because it wouldn't have made a difference in the original design. The original design had the same component parts. Obviously, as we just discussed, one of the parts was different, but the assembly was the same. And if you look at the verdict with respect to the original design, the jury held IPS liable for direct infringement on all counts and all claims. So they couldn't have made that. I don't believe they were making that leap that because in IPS's hands the cap wasn't attached, thus they don't infringe because, in fact, on the original design they found us to have infringed directly. After trial, as we were just discussing, the judge vacated the verdict of direct infringement against IPS for its sale of that revised classic product line because, in the judge's mind, insufficient evidence existed to establish infringement under the Doctrine of Equivalence. Once the judge made that conclusion, he erred by not also vacating the indirect infringement verdict with respect to the same product line. To put it most simply, the asserted claims are directed to an assembly, and if IPS does not infringe when it makes and sells the complete assembly, then there's simply no way that a buyer can directly infringe and install using the same assembly of parts. We're not dealing with method claims, as we just discussed, or claims directed to an installed system, but just an assembly of parts that have certain capability. In the blue brief, you argue that enhanced damages can't be awarded for the revised products because they were developed after WCM filed suit. Where do you make that argument before the district court? Where did we make it before the district court? Yeah, I need a record site, please. Yeah, if you don't mind, I'll move on until my co-counsel here locates it. Was that part of the argument that led to the October 5th summary judgment of no willfulness as to any post-filing? Well, I think, Your Honor, certainly in our motions for judgment as a matter of law, we argued that since the judge had held that there was no post-trial willful conduct, that it wouldn't seem to extend to a product that was developed post-trial. And in fact, his ruling of no post-trial willfulness was based in part on the fact that we had redesigned. But on the issue of willfulness... I will want to cite it. Absolutely, Judge Waller. On the issue of willfulness, the record is devoid of substantial evidence of egregious conduct. All of the activity that the court relied on in its opinions to justify willfulness took place years before the patents and suit issued. It's undisputed that WCM filed suit seven days... Why can't we consider knowledge of a pending patent application in considering willfulness? Well, I don't think we had knowledge of a pending patent application. I think state industries even suggest knowledge of a patent within the family that wasn't asserted isn't sufficient to establish pre-suit egregious conduct. A patent application really informs you of little. There's no guarantee that the claims will ultimately issue the way they are. There's no guarantee the claims will ultimately ever issue. I don't remember. In this particular case, was the... Whatever the relevant patent is... Had that been published? Was it a published patent application? I believe it had been published, but we're talking about... The first application was in 2003. They didn't issue the patents until 10 years later. The notice of allowance here was roughly September, is that right? Again, probably several months before. Right. Does the record tell us or do you know enough about how this works in general? Would that notice of allowance have been publicly knowable? It certainly would have been a publicly available document, yes. Just as it appears on some... Yes, private pair or public pair for the U.S. Patent and Trademark Office. Correct. And the evidence of you all monitoring patent developments was what exactly? Well, the evidence related to, as Mr. Casella and Mr. Humbert testified to, that they were monitoring patents. They weren't monitoring patent applications. And again, we're talking about... What evidence were they monitoring? I don't know if it was expressly stated, but I think there was inference that they were monitoring WCM's patents on some level. But again, the patents at issue here issued days before this litigation began. This is a product that was put on the market... But the testimony, is this Mr. Humbert? Excuse me, yes. Okay, so didn't the testimony include that there was... and some of those catalogs marked WCM products, patent pending? Patent pending, correct. But again, I think to hold companies at bay because literature indicates patent pending, I don't think establishes egregious conduct. I think monitoring competitors' products, designing functional equivalents... Doesn't patent pending tell you you're acting at your own risk? I think patent pending gives you notice that they've sought a patent, but I don't think it tells you that you're at a high level of risk. My experience with the patenting process is that the vast majority of the patents either don't come out or they don't come out in the form that they were originally sought. And we're talking about, again, a prosecution that took, in essence, if you look at the life of the family, close to 10 years before they were able to get this patent. I don't think it would be reasonable to expect a company to hold off sale of a product based on a patent pending notice for 10 years. What about the evidence of copying? I think the evidence of copying is... Isn't that important, at least background noise, for the jury to evaluate? I think evidence of copying is important background, in essence, if it related to the product at issue. But the evidence that was put in the record in terms of copying didn't even relate to the waste and overflow assemblies. I believe there were two emails that were referenced either potentially knocking off or could we do this, and neither one of them related to the waste and overflow assembly that's the subject of a lawsuit. So that's where we take issue with this evidence of copying because we don't believe there is any evidence that we copied their product. Can you just very briefly give us the timetable here? Because that's the essence of your argument, the time between the patents issuing and you being apprised of the patents and the suit being filed. I think that's very important. That's, in my mind, sort of the theme of this case. Our client acquired a company in 2010 that had been making a product for eight years, and the court took issue with the fact that they didn't conduct some sort of investigation at that point in time  that the client had over hundreds of products were they to investigate each and every one. I would argue that they shouldn't. What they did was, you know, you look at a product that's been on the market for eight years, I think there's a reasonable presumption if you haven't heard from WCM or some other entity that that product is free and clear. Can I ask this one question? Assume for purposes of this question that willfulness stands. I don't know whether you made an argument to this court and secondarily to the district court that even if willfulness stands, the enhanced damages ruling here, I guess a trembling, should be set aside. In particular, what is that argument? What do you have to say about why, even if this was willful, there either shouldn't be any enhanced damages or as much as trembling? I think, you know, the judge erred as a legal matter and a factual matter in assessing enhancement, and I believe we certainly made those arguments in post-trial motion practice. Did you specifically say even if enhancement is okay, trembling is not okay? That's just too much of an enhancement. I don't know if we specifically argued that the magnitude was inappropriate, but we argued that certainly that enhancement in itself was inappropriate because all the read factors were not taken into consideration. And a matter of fact, in my opinion, the judge refused to take into consideration several read factors, and I'm not sure he has the latitude to do that. But I think Judge Toronto's question is one that I have as well. I mean, I see that at least in blue, you're saying in any event, i.e., even if you affirm willfulness, there shouldn't have been enhanced damages. But was your argument reduced to all or nothing, i.e., you were only arguing there should have been nothing in enhanced damages, which it seems you were, as opposed to saying there was just too much of an enhancement? I think our argument was essentially that the damages should not have been enhanced. At all? At all. And besides willfulness, what's the reason that... Well, I believe if you look at the read factors, you know, we argued to the district court judge the closeness of the case. He summed it up that the case wasn't close. He refused to take into consideration that there were originally eight patents at suit, 37 claims. We had knocked out five of the patents and 31 of the claims prior to suit, but he refused to take that into consideration in terms of the closeness of the case. He refused to take into consideration the fact that we redesigned the product as a remedial action. You know, if you look at his decision on this matter, he didn't address that at all. He didn't address the fact that we had several pre-suit victories. He also didn't address the fact that we did not attempt to conceal. We filed our own patent application in 2003 and obtained a patent. But if your quibble... not quibble, but if your disagreement is with his assessment of the read factors, that can... can that not lead to alternative conclusions? One is that there shouldn't have been any enhancement at all. Alternatively, well, we could have enhanced, you know, one time or $50,000 or something, but it should have certainly not... was insufficient to support a trembling of damages. Absolutely. But I thought you had just kind of indicated that you didn't really make that argument. Well, I think, you know, I think we feel strongly that no enhancement. I guess I certainly... I'm not going to sit up here and say we didn't make the argument, but I think the crux of our argument was we think that enhancement in any instance is inappropriate and certainly trebling in view of these facts is excessive. But even if we look at willfulness, you know, I want to go back to willfulness for just a second. I mean, we're talking about there was no pre... post-patent willful conduct. So his decision on willfulness was based entirely on pre-patent conduct, and I think that would be a first instance for this court and any court to hold an entity willful based entirely on pre-patent conduct. Do you have Judge Wallach's site? Excuse me? Judge Wallach was waiting for his... I'm sorry, yes, Judge. My apologies. It's a... I believe it's at Appendix 4 at the very bottom of the page. Okay. Thank you. Thank you. We'll restore your rebuttal time. Thank you. I appreciate it, Your Honor. Good morning. Good morning. May it please the court? IPS's indirect infringement argument is just wrong as a matter of law. They're arguing that there can be no direct infringement because they were not a direct infringer. In this particular case... Yes. ...the finding of no direct infringement is a finding that encompasses the entirety of what the plumber eventually ends up with. So unless you have an argument for why a claim element is not met until the plumber puts it all together, then it seems to me on the premise that we're starting with here that there's nothing wrong with their argument. Well, two points, Your Honor. First of all, that is an argument that the jury verdicts are inconsistent. I think fundamentally that's what is being argued. And what you need to do is look at the jury verdict that is being challenged under JOMOL and say, is there substantial evidence? Now, that's a procedural aspect. To answer your question, is there some way the jury could have found no direct infringement but indirect infringement, well, you did ask about the detachably engaged part of it, and the jury could have found for certain claims that requires the cap to be detachably engaged that somebody had to actually install it. Was that a point that the defendants made? I don't believe they did make that point. So why would you expect that the jury could... If that wasn't even contested, that everybody assumed that the assembly in the tub is the same as the assembly that you ship out when you ship out the full kit. Based on these facts and given the instructions that were given to the jury, it's possible the jury could have done that. But to get back to my first point, I think that really comes down to are you trying to harmonize these verdicts by saying the indirect verdict can't stand because of the direct verdict? And that's wrong. They did not raise that. They had two opportunities to raise the fact that these verdicts were inconsistent, and they didn't do that. I may be completely wrong on this. The jury found infringement under DOE, and it's the judge. So this came up on J-Mall, where he threw out the DOE. So it wasn't a matter of the jury found DOE. It's the judge that created this question here about direct or indirect after he overturned the jury verdict. And at that motion hearing, IPS said there was no inconsistency. They have said that they did not believe the verdicts were inconsistent, and now they've turned around and said, you need to resolve these. I'm curious about the same thing. I think the chief is. What exactly are the two things that you think their argument amounts to saying are inconsistent? Things in the jury's verdict. That a verdict of no direct infringement cannot be reconciled with a verdict of direct infringement. There was a verdict of direct infringement. There was, yes. So the two things you're saying are inconsistent. One doesn't exist. There is no longer a verdict of direct infringement. Yeah, but in terms of what the jury analyzed and whether they were inconsistent, they weren't. They found direct infringement. This issue was only created post-jury when the judge throws out the DOE. So I don't see how the analysis of inconsistent jury verdicts plays into that. The inconsistency, if it existed, was there when the jury verdict came back because the jury on indirect infringement could have found either literal or doctrinal equivalence. They were not separated out. IPS did not ask for separate verdicts on literal or doctrinal equivalence on indirect infringement as there were for the direct infringement. And so we don't know what the jury did on indirect infringement. What we have to do, since this is being challenged on JMOL, is look at was there substantial evidence to support the verdict, not whether some other portion of the verdict undermines the finding of indirect infringement. And your primary argument, and I guess you present this as a cross-appeal, you get to make it regardless of whether it's a cross-appeal or not, is that, yes, there was sufficient evidence of equivalence infringement for the revised verdict. There was for direct infringement. And that makes this indirect infringement as you go away. It makes it go away. But even if it doesn't go away, there is enough evidence of indirect infringement to support the JMOL verdict, to support the verdict that is being challenged under JMOL. This is a Rule 50 motion, not anything else. And so what you look at is that verdict of indirect infringement, contributory or induced infringement, supported by substantial evidence. And it is. There is evidence that all the limitations are met, that there were instructions to the installers or the users about how to install the revised classic. None of that's challenged. The only thing that's being challenged is that some other finding the jury made undermines this verdict. And that's not the right analysis. Well, you might want to tact yourself to Judge Toronto's lifeline here, which is to argue about the DOE. Well, the doctrine of equivalence, the judge here did make a mistake. He did throw it out because he said there wasn't opinion testimony. Opinion testimony, there are no rigid rules that say you have to have opinion testimony for the doctrine of equivalence. Your expert got thrown out, right? He did, yes. So what, in lieu of opinion testimony, what's your strongest testimony that you think makes that unnecessary? There are two parts to that. First is, IPS's expert on, for example, certain claims like the 220 patent, Claim 12, admitted every limitation is met except one. And that's the LUGS. And everybody agrees that was the focus in this case. Then you have Mr. Humber, who is IPS's director of engineering, saying that the revised classic, the way they changed it, it works the same way as the previous product. That's what you have to show for equivalency. He said you put it on, you turn it, that's working the same way. He didn't use the words function, way, result. And the difference between the two is this finger indentation stuff? Yes, they removed the finger indentations. And is that in the claims themselves? No, it's not. And what, is it just a circle around? It is. So you now just have to, by friction, grip the thing rather than... That's right, there are high points that are on the, it's a different shape, it's a circle with a, I think it's got five or six points on it. And those are raised. And this was demonstrated... The high points are in both. The high points were in both, yes. But they removed the indentations, and the jury could have said, well, they're no longer LUGS, because they don't look like they're scalloped. But you put it on, and you turn it, and you could hear it click. You could actually feel the friction. And the jury had these exhibits, and they were demonstrated to them. And Mr. Humbert testified, it doesn't work any differently. It works the same way. And that's the essence of equivalency. And the judge, I think, just mistakenly said, first he let the case go to the jury. He said, well, you don't have to have an expert. You can still try this case. And they did. And the jury still found infringement under the doctrine of equivalence. And the judge said, well, I think you need opinion testimony. That's just not required. And that's the kind of rigid rule that you don't need. You do need particularized testimony. But here, that requirement is very low, because there's only one limitation that was really at issue. WCM didn't have to put up in bright lights, we're now talking about the doctrine of equivalence. They gave the jury enough here that they could find it. And when you go to those cases that discuss things like particularized testimony, the issue is you just don't want to have overall similarity. You don't want the jury just to be saying, these two things look alike. That's not the case, because of the way it was presented and that only one limitation is at issue. You want to turn to willfulness? Yes, I'd be happy to. In this case, on willfulness, well, there are two aspects to it. First, as to whether the amount was trebled, what the judge did, that's an abusive discretion standard. I don't think IPS, in their opening brief, even mentioned an abusive discretion. What about the district court's determination that IPS acted with objective recklessness? Yes. In light of HALO? Well, he was operating under the pre-HALO Supreme Court case, and so he made that finding. And as this court has said since then, that can be something that is considered an increased damages. He found much more than just objective recklessness. What's the substantial evidence of subjective recklessness on the record? Sure. The sorts of things that the judge pointed to, and that were in front of the jury, was copying, that they frequently copied products. Historically, but nothing to do with this patent of these products. There was an inference that could be drawn that they copied these products specifically. The nut that IPS used... I've always wondered if you can make an argument that at a point a court can take judicial notice of a business practice, if you give enough evidence. I think that's probably true. But the nut that IPS used could be threaded onto WCM's pipe. That doesn't happen by accident. Those threads were very carefully designed to be of a certain rise. There is no code that says you have to do it that way. It wasn't a coincidence that one could fit on the other, and the jury was within its rights to draw an inference that they had actually had the product in hand, because the chances of those things being identical were very low. Just focus on this. This patent issued December 5th or something? That's right. December 5th. And even disregarding the Colorado case, this suit is January 9th or... The suit was filed five weeks later. Five weeks later. There is not actually any evidence that they knew about this patent before the suit, right? I think there's circumstantial evidence that they monitored WCM's patents, that they knew that there was patent pending, and, as Your Honor recognized, those things were publicly available. I think a reasonable inference the jury could make. Well, I said those things. I'm saying what things were. Oh, that notice of allowance before execution. Is it... I think there was a reference to they hired some patent monitoring service. I don't know what it's called. Is there evidence about what a reasonable use of such a service would be, like tracking in what period of time, what's going on in the PTO? I don't think that there is evidence of that. It's just evidence that they did monitor WCM's patents and knew what was going on, and so the jury could infer that they knew about this. But you also have to look at the totality of the circumstances. Giving, again, credit to the jury and what the judge said. There was copying. Once this patent issued, what did they do? And we're not just looking at this very narrow window. They waited... Why aren't we? There was a summary judgment that said, and you haven't appealed that, a summary judgment of no willfulness as to any post-January 9th conduct. Yes. Two things. One, the jury wasn't told that. The jury was free to look at all the conduct, and in fact... No, but the question of willfulness is what evidence is there, and there is a determination binding on you as a matter of law that whatever they did after January 9th was not willful conduct. By itself. I agree. That is what the judgment was, that post that conduct by itself, the judge said there was not a material fact that that supported willfulness. Now, we know after the Mentor case, that's actually wrong, because the judges... That's not the issue. I understand. But the jury was not told that, and we can look at all the evidence that the jury looked at to see whether the verdict of willfulness was supported. And the jury was not given an artificial time period to look at. They actually found that there was willful infringement with respect to the 272 patent, which issued after the suit was filed. They were not told, you cannot look at post-litigation conduct. So for the jury verdict, knowing the law, what it is now, that post-litigation conduct is not excluded, I think this court can look at all of it and say the verdict was supported. Now, the judge said no willfulness after that time. It can't support it by itself. At least that's the way I understood the ruling. But he still found that there was enough evidence to support willful infringement and egregious conduct, which is then reviewed for an abuse of discretion. And I think that's really where it comes out, is that there was enough to support the verdict, looking at the totality of the circumstances, and the judge was correct. The verdict wasn't a closed call. Their defenses were particularly weak. He saw this case. And that's exactly what HALO has, I think, instructed, is that the district court judges are supposed to look at the totality of the conduct and determine whether or not there's willful infringement. Did your opposing counsel, did you get any flavor that they were saying, well, it's all or nothing? Your Honor, I'm not aware of any arguments where they argued for a lesser amount or suggested some lower amount would be appropriate. And even on their appeal, I think the focus is on the willfulness verdict. Yeah, but they do have a separate section on the enhancement, even assuming there was willful conduct. They do. And so the question is whether or not all or nothing fairly includes something less than all or nothing. And I think you agree that arguably it does? I don't think this court has really any room to find something, whether it's all or nothing. And specifically, because- I'm sorry, let me understand. So you're saying it has to be all or nothing, because that's the only argument they made? I don't think they have made an argument for something in between. I agree. And in fact, if you look at the section where they say it shouldn't have been trebled and there wasn't egregious conduct, it's based on the jury verdict. They don't even say abuse of discretion. It's not an argument that notwithstanding the willfulness verdict, the judge abused his discretion. Well, they do make that argument, don't they? I mean, there seems to be a whole section that's titled even assuming, I think, something of that sort. My recollection is they basically have two paragraphs. One says no enhancement because willfulness is wrong. But then the second paragraph says even aside from that, there was a failure to consider at least one, maybe more than one read factor. That is true. That does not amount to abuse of discretion. And that is what- No, but that's the result. We're talking about more or less a waiver question of whether they preserved an argument, not whether you should win or lose on the results of that argument. So can you answer the former rather than the latter? If there isn't a waiver, it's the thinnest argument limited to a paragraph, which is not fully fleshed out. And I don't think whether you say they didn't raise it or they haven't raised it adequately or they have not shown an abuse of discretion, it all comes out in the same place. Thank you. Thank you. I'd just like to address a couple of quick things on rebuttal. First, I'd just like to go back to where we remind us how we got here. This was before trial. They were informed that their expert was going to be excluded. And the judge- I'm going to also- Excuse me. Again, by showing me where on appendix 4, you say at the bottom of the page. I believe 425. Sorry, Your Honor. So heading into trial, they were informed that they would not have a technical expert. I'm sorry. I want to just go back to Judge Wolff just to make sure he's satisfied with what you- Well, you go ahead and look. I just looked at the bottom of 4. Sorry. That is what I referenced. That was my mistake. Then in the judge's pre-trial order, it was indicated that one of the two contested issues was whether the revised classic product line infringed under the Doctrine of Equivalence. So heading into trial, there should have been a heightened awareness that the Doctrine of Equivalence was at issue here. But can you explain to me? I mean, there's no difference between the revised and the classic other than this thing around, right? I mean, you agreed with- The lock nut. Correct. Whether the lock nut has lugs. Correct. Well, the finger indentation. Well, if you actually look at it- The stuff that I'm looking at- To me, the finger indentations create the, you know, sort of quite a different appearance. You know, the question is whether- Where in the claim are- Where does the claim talk about the finger indentations? I appreciate that question, Your Honor, because that's what I take issue with here. None of these witnesses were referencing the claim in their commentary. They were comparing accused product to another accused product. And the claim limitation requires a nut element with a threaded portion that is compatible with said threads of said overflow pipe. Sudden nut element having an outer periphery with a series of radially extending lugs that detachably engage an inner surface of a cap that fits over said nut. And none of the testimony referenced is particularized, certainly not directed to this particular element under the insubstantial differences or the function way result test, which would allow then us to also focus on the claim construction, because several of these terms were construed, and also look at the scope and content of the prior art. But because there was an improper doctrine of equivalence analysis performed here, there's insufficient evidence. And I think the judge, you know, as he was there, he saw it. He realized that it was insufficient. They knew going in, and they didn't meet their burden. So they shouldn't thus be rewarded by cobbling together testimony from four different witnesses, three of which are their own employees, to make such an argument. And then the last thing, I just want to... Now I want to ask you something. Okay, sure. I asked you, you argued that enhanced damages can't be awarded for revised products because they were developed after WCM filed suit. And I asked you for a citation of the record, and I'm looking at appendix four and appendix five, pages three and four of the judge's order, and I don't see that. It's only a paragraph. Where is it? Where's the timing issue discussed at all there? What am I missing? Well, I think, and I can't read the laptop because of the size of the print, but... I think the argument was made in four and five where they're referencing what they call base only on infringing units, because at that point their view was the revised classic wasn't an infringing unit under the arguments that were previously made, that it was not found to infringe under direct infringement, and then later... That's it, huh? That's the basis. All right. That's what we call a stretch in the law. The last thing I'd just like to point out, when we were talking about abusive discretion standard and the issue of enhanced damages, as this court held in Reed, the district court is obligated to explain his basis for enhancing the damages. But more importantly, the district court must not only consider factors that favor enhancement, but also factors that favor or weigh against enhancement. And in this instance, I think I've pointed to three clear instances where the district court didn't discharge his duty to consider things that mitigate against enhancement. Okay, thank you. Thank you, Your Honors. We thank both sides, and the case is submitted.